United States Courts
Southern District of Texas
FILED

FEB 16 2017

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY SUTTLES, ADMINISTRATIVE LAW JUDGE | § § § | |
| Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| NANCY A. BERRYHILL, IN HER OFFICIAL CAPACITY AS ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | § § § § § § | |
| Defendant. | § | |

**COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. §§ 2000e *et seq.*** 

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Judge Gary Suttles, by and through his undersigned attorney, for his Complaint against Defendant, Nancy A. Berryhill, in her official capacity as Acting Commissioner of the Social Security Administration, states and alleges as follows.

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a) and (m), 3(a), and 5(g)(1), and seeks preliminary injunctive relief pursuant to Fed.R.Civ.P. 65, attorney's fees, and costs against Defendant to maintain the *status quo* and prevent Defendant from imposing further retaliatory discipline upon Plaintiff pending the exhaustion of his Title VII administrative and judicial remedies.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-5(g)(1).

3. The events giving rise to this claim occurred in the City of Houston in the Southern District of Texas and Plaintiff's residence is in Missouri City, Texas. Accordingly, venue is proper in the Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff, Judge Gary J. Suttles ("Judge Suttles" or "Plaintiff"), began working as an Administrative Law Judge for Defendant Social Security Administration on April 1, 2005.

5. Defendant Social Security Administration ("Agency" or "Defendant") is a federal agency with offices throughout the United States whose purpose is to administer the Social Security Act and related laws that have the basic purposes of providing for the material needs of individuals and families; protecting aged and disabled persons against the expenses of illnesses that may otherwise use up their savings; keeping families together; and giving children the chance to grow up healthy and secure.

## EXHAUSTION OF THE ADMINISTRATIVE PROCESS

6. Pursuant to 29 CFR 1614.105(a)(1), Plaintiff timely initiated the Federal Sector Equal Employment Opportunity process on December 21, 2016, by calling the Civil Rights and Equal Opportunity staff to schedule contact with an EEO Counselor concerning his claims that the Defendant had violated and continues to violate Title VII by discriminating against him on the basis of his religion, creating a religiously hostile work environment, retaliating against him for his protected activity of seeking a religious accommodation, and for engaging in the EEO process.

7. On February 2, 2017, Judge Suttles had an initial interview with a Contract EEO Counselor and on February 10, 2017, he notified the Counselor of his election to participate in Alternative Dispute Resolution in an attempt to resolve his conflict with Defendant.

8. ADR has not yet been scheduled and the EEO Counseling process has not yet been completed.

### Factual Allegations

9. Plaintiff began his employment with the Agency on April 1, 2005, as an administrative judge for the Houston District SSA Office.

10. Plaintiff's current federal employment Grade is ALJ3.

11. Throughout his tenure as an ALJ, Judge Suttles has received numerous, annual commendation letters congratulating him on his efforts and for maintaining a high level of performance and quality.

12. Throughout his almost 12 years of employment as an ALJ, until the current situation, Judge Suttles has never received a formal reprimand or warning of any kind.

13. On May 17, 2016, Melissa Huett, Hearing Office Director ("HOD"), sent an email to Houston Region SSA workers, including Judge Suttles, entitled "Mandatory Lesbian, Gay, Bisexual and Transgender Diversity and Inclusion Training –ACTION REQUIRED BY JUNE 6, 2016."

14. The May 17, 2016, email ordered Judge Suttles to view by June 6, 2016, a mandatory video on demand (VOD) entitled *Lesbian, Gay, Bisexual and Transgender (LGBT) Community*, an approximately 17-minute video that "includes an introductory message from the Acting Commissioner, as well as a brief session on tips for increasing cultural awareness in a diverse and inclusive environment."

15. HOD Huett informed the Houston Agency employees that the mandatory VOD training "continues our support of the 2011 Executive Order 13583—*Establishing a Coordinated Government-Wide Initiative to Promote Diversity and Inclusion in the Federal Workplace.*

16. The next day, Judge Suttles responded to HOD Huett's email with the following email statement:

> I will not be participating in this training. I am already fully aware to treat all persons with respect and dignity and have done so my entire life. Furthermore, this type of government indoctrination training does not comport with my religious views and I object on that basis as well.

17. On May 25, 2016, Region IV Hearing Office Chief Administrative Law Judge ("HOCALJ"), the Honorable Monica J. Anderson, sent Judge Suttles an email stating:

> [G]iving you a direct order to hereby comply with Agency mandatory training by watching and completing the VOD on LGBT Diversity and inclusion by June 6, 2016. This directive is based upon your May 18, 2016 email to hearing office management indicating that you would not comply with this mandatory training for all SSA employees. Failure to follow this directive may lead to disciplinary action.

18. On the same day, Judge Suttles responded to HOCALJ Anderson's earlier email reiterating his May 18, 2016, intention to not participate in the VOD training and invoking his First Amendment right to freedom of religion as well as his right to religious accommodation in accordance with the Civil Rights Act of 1964.

19. On May 27, 2016, HOCALJ Anderson sent a Memorandum to Judge Suttles entitled "Religious Accommodation Request Decision" in which she informed Judge Suttles that she was considering his May 25th refusal to review the VOD "as a religious accommodation request."

20. HOCALJ Anderson denied Judge Suttles' request for a religious accommodation because, she asserted, "the agency needs to make sure that all employees know about and comply with this [that no person is discriminated against on the basis of sex (including sexual

orientation] policy and the governing law, it would be an undue hardship to excuse you from the training."

21. Between May 27th and July 22nd, HOCALJ Anderson and Judge Suttles discussed possible religious accommodations. During those discussions and in a June 22, 2016, meeting, Judge Suttles suggested that a reasonable accommodation would be for him, at his own expense and on his own time, to take a professional ethics course or view an alternative diversity course that did not deal with such specific community of people.

22. On July 22, 2016, HOCALJ Anderson sent Judge Suttles a second Memorandum in which she, again, denied Judge Suttles' request for a religious accommodation from the mandatory VOD training "because granting your request would impose an undue hardship on the agency" and ordered Judge Suttles to watch the 17-minute VOD or read its transcript on or before August 2, 2016.

23. HOCALJ Anderson's July 22, 2016 order, for the first time, offered Judge Suttles the opportunity to read a transcript of the VOD as a "reasonable accommodation" to watching the VOD.

24. The Agency denied Judge Suttles' request for a religious accommodation because it would create an "undue hardship" for the agency. HOCALJ summarized the "hardship" in her July 22, 2016 Memorandum as follows:

> Allowing employees to remain untrained on the topics covered by the mandatory video creates a risk of liability to the agency, poses a potential harm to other employees, and threatens the agency's core public service mission. Indeed, the agency is committed to providing the highest standard of considerate, thoughtful, and culturally sensitive customer service to the public. The agency must also ensure that all employees treat each other with courtesy and consideration. In mandating all employees to view the LGBT mandatory training video, the agency is ensuring all its employees

are trained about, and will comply with, agency workplace rules and EEO principles.

25.     HOCALJ Anderson did not identify any actual monetary or administrative expenses it would incur by granting Judge Suttles' requested accommodation such as would constitute an undue burden on the agency.

26.     HOCALJ Anderson did not identify any disruption to other agency employees or work that would result from granting Judge Suttles' requested accommodation such as would constitute an undue burden on the agency.

27.     Judge Suttles continued to refuse to watch the mandatory VOD because it is the substantive content of which, not the medium by which the content was delivered, that violates his faith.

28.     On November 8, 2016, despite knowing that the VOD would violate his faith, Regional Chief Administrative Law Judge ("RCALJ"), the Honorable Judge Joan Saunders, issued an official reprimand to Judge Suttles for his failure to follow HOCALJ Anderson's directive to watch the mandatory VOD.

29.     RCALJ Parks Saunders further told Judge Suttles that "my confidence in your ability to perform your assigned duties in a fair and impartial fashion has been negatively affected" by his refusal to watch or read the transcript of the VOD because of his religious beliefs.

30.     RCALJ Parks Saunders informed Judge Suttles that her official reprimand would be placed, and has been placed, in his Official Personnel Folder (OPF) and his SF-Extension File for a period not to exceed one year.

31. RCALJ Parks Saunders further informed Judge Suttles that "[f]uture acts of misconduct may lead to a more serious form of discipline, as appropriate, up to and including your removal you [sic] from Federal service."

32. On the same date, RCALJ Parks Saunders also notified Judge Suttles that in response to his refusal to watch or read a transcript of the mandatory VOD, "you are not eligible to participate in the telework program and if you were on the reassignment register, your name has been removed."

33. Finally, on the same November 8, 2016, despite her knowledge that viewing the VOD would violate his religious faith, HOCALJ Anderson issued another Direct Order to Judge Suttles to either watch or read the transcript of the mandatory LGBT training 17-minute VOD on or before November 30, 2016, warning him "that failure to comply with this directive may lead to further disciplinary action."

34. The only acknowledgement of Judge Suttles' religious conflict with the VOD job duty was HOCALJ Anderson's specious recognition "that everyone has their own personal beliefs, and the agency is not attempting to change those beliefs with LGBT training or impose a lifestyle on an employee," thereby trivializing his sincerely held sacred religious beliefs to merely "personal beliefs."

35. The very next week, on November 15, 2016, RCALJ Parks Saunders sent Judge Suttles a commendation letter citing his continued efforts for issuing decisions in "a timely manner" and for the "high level of performance and quality" in how he processed his work during Fiscal Year 2016 and encouraged him to "[c]onsider sharing some of your best practices with your HOCALJ. Your process and procedures may be what we need to communicate to other Judges to enable them to perform at a higher level."

36. On December 2, 2016, Judge Sutttles sent an email to HOCALJ Anderson requesting an extension of time until December 30, 2016, in which to respond to her new Direct Order, which was granted.

37. On December 21, 2016, Judge Suttles contacted an Equal Employment Opportunity (EEO) counselor at the Civil Rights and Equal Opportunity (CREO) to report his belief that the November 8, 2016, official reprimand was based on discrimination, was retaliatory, and created a religiously hostile working environment, thereby initiating the EEO procedures as is his right under federal law.

38. On January 5, 2017, HOCALJ Anderson sent Judge Suttles another email reminding him that he was to have viewed or read the transcript of the mandatory VOD on or before December 30, 2016.

39. On January 6, 2017, in response to HOCALJ Anderson's email of the previous day, Judge Suttles informed her that he had retained counsel and had filed an action with the Dallas CREO EEO and that the process, including the possible ADR and mediation would take until at least March 31, 2017.

40. Judge Suttles mistakenly understood that the EEO/ADR process extended HOCALJ Anderson's December 30 deadline to comply with her mandatory VOD order.

41. On February 2, 2017, after the EEO procedures were somewhat delayed because of the holiday schedules and illness within the CREO offices, Judge Suttles requested of HOCALJ Anderson another 60-day extension to respond to her November 8, 2017, Direct Order to give the EEO process time to proceed.

42. In a same-day response to Judge Suttles' extension request, HOCALJ Anderson emailed Judge Suttles another Memorandum in which she ordered him "to watch or read the

8

transcript of the mandatory LGBT training VOD on or before February 14, 2017. Please be advised that failure to comply may lead to further disciplinary action."

43. HOCALJ Anderson's Memorandum made it clear that she was aware that Judge Suttles was exercising his right to engage in the EEO counseling process, that the efforts of Judge Suttles to engage in the counseling process was not cause for excusing his watching the VOD during his ongoing efforts to protect his religious beliefs, but, instead, caused HOCALJ Anderson to issue another order that again required a job duty that she knew was in direct conflict with those religious beliefs.

44. On February 13, 2017, Judge Suttles requested a religious accommodation from HOCALJ Anderson's February 2, 2017, order and requested a 60-day extension in which to respond to the February 2 Order in order for the EEO and ADR process to take its course.

45. On February 13, 2017, HOCALJ Anderson denied those requests for an accommodation and an extension and reemphasized that his deadline for watching or reading the VOD transcript was February 14, 2017.

46. By persistently offering Judge Suttles only one option of viewing the content of the VOD despite his religious beliefs, the Agency acted with malice or reckless indifference to Judge Suttles' Title VII rights under federal law.

47. Judge Suttles has been informed that the initial EEO investigatory stage should be completed on or before March 21, 2017.

48. Judge Suttles has also requested the opportunity to participate in EEO's Alternative Dispute Resolution in an effort to come to some mutually agreeable resolution to the impasse which now exists and which now immediately threatens his discipline up to and including his removal from Federal service.

49. Judge Suttles has already suffered several adverse employment actions in the Written Reprimand that has been placed in his OPF and his SF-Extension File for a period not to exceed one year, the loss of the job benefit of telework, and the loss of the job privilege of placing his name on the reassignment registry, not to mention the mental and emotional stress under which he has been laboring in response to the Agency's repeated demands that he violate his faith and threats of further discipline if he refuses.

50. The Agency continues to demonstrate its hostility by its repeatedly directly ordering Judge Suttles to complete a job duty that the agency has been informed violates his religious beliefs and threatening further discipline, up to and including his removal from Federal service for continuing to request a valid religious accommodation under the law.

51. The Agency continues to demonstrate retaliatory conduct by its repeated direct orders to violate his faith and threats of further discipline up to and including Judge Suttles' removal from Federal service when the agency knows that he has in good faith sought a reasonable religious accommodation from the agency, has sought EEO counseling, and intends pursue his administrative and judicial equal employment opportunity remedies if an earlier resolution to the conflict is not reached.

52. The EEO counseling, ADR, formal EEOC complaint, and judicial review process has just begun and could take some time to complete.

53. The Agency has made it quite evident that it does not intend to wait on the completion of the EEO counseling, ADR, formal EEOC, and judicial processes before it carries out its threatened discipline of Judge Suttles for his failure to comply with the Agency's mandatory VOD requirements.

54. Positioned as he is in the middle of the Agency continuing to "pile on" direct orders to him to watch or read the transcript of the 17-minute VOD and his requirement to exhaust his administrative and judicial procedures to remedy his claims of religious discrimination, religiously hostile work environment, and retaliation, Judge Suttles is at high risk for further Agency discipline before he is able to exhaust his administrative and judicial remedies.

55. The Agency has wholly failed work in good faith to reasonably accommodate Judge Suttles' sincerely held religious belief against watching or reading the transcript of the mandatory VOD, *Lesbian, Gay, Bisexual and Transgender (LGBT) Community.*

56. Granting Judge Suttles the reasonable accommodation of watching an alternate video or taking an alternate CLE course on professional ethics at his own expense and on his own time would not cause an undue burden upon the Agency.

57. Judge Suttles has maintained strict confidentiality regarding the issues surrounding his request for an accommodation and the subsequent actions of the Agency in connection thereto; therefore, unless disclosed by HOD Huett, RCALJ Parks Saunders, or Judge HOCALJ Anderson, the issues are not a matter of public knowledge among his fellow local Agency employees.

58. The Agency's repeated direct orders to Judge Suttles to watch or read a transcript of the religiously objectionable VOD and threatening to discipline him for his faith-based refusal is unwelcome and is sufficiently severe to create an intimidating and hostile work environment because he may no longer work from his home office multiple days a week, is no longer eligible for transfer to another, more convenient, office, and he has been told by RCALJ Parks Saunders,

that she no longer trusts him to carry out his job duties when, in fact, he is one of the highest performing ALJ's in that Regional Office.

59. The Agency retaliated against Judge Suttles after he requested a religious accommodation by issuing a formal written reprimand to him and including it in his Office Personnel File for at least one year, removing his job benefit of teleworking, taking his name off the job transfer list, and continuing to issue direct orders in response to his engaging in protected activity EEO/ADR activity.

## CAUSE OF ACTION

### COUNT ONE
### PRELIMINARY INJUNCTION

60. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-59, inclusive as though set forth herein.

61. There is a substantial likelihood that Plaintiff will succeed on the merits, and a balance of hardships favoring Plaintiff. The Agency's failure to grant a religious accommodation to Judge Suttles without any demonstration of any undue burden upon the Agency that would result from accommodating him makes it a strong likelihood that Judge Suttles will succeed on any Title VII discrimination, hostile work environment, or retaliation charges he may be forced to file against the Agency, especially in light of his sterling work record and the lack of any substantiated complaints regarding his treatment of LGBT individuals.

62. Plaintiff will continue to suffer irreparable harm, for which there is no adequate remedy at law, absent injunctive relief. Judge Suttles is suffering and will continue to suffer irreparable harm by the threat of either the loss of his First Amendment right to the free exercise of religion even for the 17-minute VOD or the loss of his ALJ position and other benefits and

privileges of his employment as an ALJ for almost twelve years without any disciplinary history or LGBT complaints.

63.     The threatened injury to Judge Suttles, even the momentary loss of his First Amendment right to the free exercise of religion or loss of his job, written reprimands in his personnel file that will impact his ability to obtain another position, job references that are likely to disparage his character and work ethic, loss of the benefits and privileges of his employment, and the likelihood that his will be deprived of Title VII's benefits by the early and harsh disciplinary actions of the Agency during the Title VII processes far outweigh the harm to the Agency if preliminary injunctive relief is granted to maintain the *status quo* while his administrative and judicial remedies are proceeding.

64.     The requested injunctive relief will have no adverse effect on the public interest. The public interests will not be disserved if injunctive relief is granted to maintain the *status quo* pending the resolutions of his administrative and judicial remedies, but instead could relieve the Agency and taxpayers of the cost in money and manpower to defend against an unlawful employment practices lawsuit.

WHEREFORE, Plaintiff prays for judgment as follows:

1.  To preliminarily enjoin Defendant:

    a.  From issuing further orders to Plaintiff to perform a job duty, specifically the viewing or transcript reading of the VOD entitled *Lesbian, Gay, Bisexual and Transgender (LGBT) Community* that would require him to violate his religious beliefs;

    b.  From further retaliating against Plaintiff by imposing upon him additional disciplinary measures for his refusal to watch or read the transcript of the

    17-minute VOD entitled *Lesbian, Gay, Bisexual and Transgender (LGBT) Community*,

  c. Ordering Defendant to maintain the *status quo* pending Plaintiff's exhaustion of his administrative and judicial employment discrimination remedies.

2. Ordering Defendant to pay Plaintiff's attorney's fees and costs in bringing this action.

3. For such other and further relief as may be deemed just and proper.

Dated: February 15, 2017    Respectfully submitted,

By: _/s/ Robert W. Painter_
Robert W. Painter
Texas Bar No. 24013284
Federal Bar No. 25737
Painter Law Firm PLLC
12750 Champion Forest Drive
Houston, Texas 77066
Telephone: 281-580-8800

**ATTORNEY FOR PLAINTIFF,
GARY SUTTLES, ADMINISTRATIVE
LAW JUDGE**